## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gary Morrow,<br><br>                             Plaintiff,<br><br>                  -v-<br><br>John Doe Sgt., Badge #2099; John Doe C.O., Badge #5342; Suffolk County,<br><br>                        Defendants. | 2:25-cv-2364<br>(NJC) (AYS) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is an Amended Complaint timely filed by Gary Morrow ("Mr. Morrow"), acting pro se, against Suffolk County and two unidentified corrections officers[1] alleged to work at the Suffolk County Correctional Facility's Riverhead location (the "Individual Defendants" and collectively, "Defendants"). (Am. Compl., ECF No. 7.) Having granted Morrow's motion to proceed in forma pauperis ("IFP") (*see* IFP Mot., ECF No. 4; Mem. & Order, ECF No. 6), the Court has screened the Amended Complaint in accordance with the requirements of 28 U.S.C. §§ 1915, 1915A and, upon such screening, dismisses the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b)(1) as set forth below.

## BACKGROUND

On April 28, 2025, Mr. Morrow filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Individual Defendants using the Court's complaint form for civil

---

[1]  Morrow names these individuals as: "John Doe Sgt. Badge #5342" and "John Doe Correction Officer Badge #2099." (Am. Compl., ECF No. 7 at 1.)

rights violations and, on May 12, 2025, Mr. Morrow filed an IFP Motion. (Compl., ECF No. 1; IFP Mot., ECF No. 4.) By Memorandum and Order dated July 17, 2025 (the "Memorandum & Order"), the Court granted Mr. Morrow's IFP Motion and dismissed the Complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1) for failure to allege a plausible claim for relief under 42 U.S.C. § 1983 against the constitutionality of the Individual Defendants' alleged failure to serve Mr. Morrow a dinner meal on one occasion. (Mem. & Order, ECF No. 6.) Although the Complaint did not allege whether Mr. Morrow was detained pre-trial or was confined post-conviction at the time of the challenged conduct, the Court dismissed the Section 1983 claim, reasoning that "the absence of a single meal does not rise to the level of a constitutional deprivation" and that the Complaint did not allege facts that satisfied the two-pronged deliberate indifference standard set out in *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). (*Id.* at 5–6 & n.4 .) In an abundance of caution and in light of Mr. Morrow's pro se status, however, the Court granted "leave to file an amended complaint to afford [Mr. Morrow] an opportunity to allege a plausible claim." (*Id*. at 9.) Further, Mr. Morrow was "reminded to review the Court's guidance . . . concerning the requirements to allege facts supporting plausible claims against his conditions of confinement." (*Id*.)

Mr. Morrow filed his Amended Complaint on August 19, 2025. (Am. Compl.)

## I.    The Original Complaint[2]

Although the filing of an amended complaint ordinarily supplants the original complaint,

"[w]here a party proceeds pro se, courts may consider facts raised by a plaintiff's original

Complaint . . . in addition to facts alleged in the plaintiff's operative pleadings." *Matthews v.

City of New York*, No. 23-cv-3959, 2024 WL 4135483, at *1 & n.7 (S.D.N.Y. Sept. 10, 2024)

(collecting cases); *see also Olutosin v. Lee*, No. 14-cv-685, 2016 WL 2899275, at *1 & n.1

(S.D.N.Y. May 16, 2016).[3]  Therefore, the Court considers the following facts alleged in the

original Complaint:

> On 3/16/25 at or about 4:00 pm dinner time at SCCF I didn't receive my halal tray
> or any tray. I asked the C.O. Badge #2099 about my tray and its whereabouts, he
> then went and got the Sgt. Badge #5342. I told him that I didn't recieve my meal,
> he told me that he'll make sure it will come with the Ramadan meals even though
> I wasn't participating in Ramadan. The Ramadan meals come and again no meal
> for me. The Sgt. Badge #5342 said its his fault but there is nothing he could do. I
> wasn't fed at all until the next day, when I'm entitled to 3 meals a day and wasn't
> provided 3 meals I was deprived my 3rd meal.

(Compl. at 4.) The Complaint also includes as an exhibit Mr. Morrow's grievance form in which

he alleges that officers told him that he would receive his halal tray at night during "Ramadan's

break-fast." (*Id.* at 6.)[4]  Handwritten onto the grievance form, is a notation that Mr. Morrow "did

---

[2]  Excerpts from the original Complaint and Amended Complaint have been reproduced here
exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been
corrected or noted.

[3]  Unless otherwise indicated, case quotations omit all internal quotation marks, alterations,
brackets, and citations.

[4]  In assessing whether a complaint states a plausible claim, this Court may consider "facts stated
on the face of the complaint, documents appended to the complaint or incorporated in the
complaint by reference, matters of which judicial notice may be taken," and documents "integral
to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023). This Court properly considers

not receive a halal dinner meal on the date mentioned due to a kitchen error" and that "corrective action" would be taken to ensure the issue did not happen again. (*Id.*)

## II.    The Amended Complaint

Like the original Complaint, the Amended Complaint challenges the failure to provide Mr. Morrow a dinner meal on a single occasion, March 16, 2025. (Am. Compl. at 1.) The Amended Complaint pleads that Mr. Morrow was detained pretrial during the event in question, and includes the following additional factual allegations:

> On 3/16/25 my Constitutional rights were violated by the staff at Suffolk County Correctional Facility John Doe Sgt. Badge #2099 and John Doe Correction Officer Badge #5342. On said date I was not fed and the staff was to blame and took the blame for me not being able to participate in my religious beliefs during a religious holiday of Ramadan wich violates the equal protection clause as well as minimum standard directives, . . . When my meal didn't come and I informed staff about it something should have been done at that time and when it didn't come during Ramadan meals something should have been done. I have a basic Human Right to be fed 3 meals a day and should be compensated for that. I've exhausted all administrative remedies and am now making a legitimate claim of Constitutional violations . . .

(Am. Compl. at 1–3.)

The Amended Complaint also brings several new federal and state law claims. First, construing the Amended Complaint liberally, it brings federal claims to enforce Mr. Morrow's rights under the Free Exercise Clause of the First Amendment and the Due Process Clause and

---

factual allegations set forth in the grievance not only because it is appended to the original Complaint, but also because it is "integral" to the Amended Complaint, which alleges that Mr. Morrow has "exhausted all administrative remedies." Am. Compl. at 3; *Montanez v. Lee*, No. 14-cv-3205, 2016 WL 3866594, at *3 (S.D.N.Y. July 12, 2016) (finding a grievance appended to a plaintiff's original complaint integral to the Amended Complaint for this same reason).

The remaining contents of the grievance form are discussed in greater detail in the Memorandum & Order dismissing the original Complaint. (*See* Mem. & Order at 2 & n.3.)

the Equal Protection Clause of the Fourteenth Amendment against the Individual Defendants under Section 1983 and against Suffolk County under Section 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Am. Compl. at 3.) Second, it brings a federal claim against the Individual Defendants under the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb et seq. ("RFRA"). (*Id.* at 3.) Third, it brings claims to enforce Title 9 of the New York Compilation of Codes, Rules, and Regulations, which the Amended Complaint refers to as "minimum standard directives":

- Section 7009.1(a), which directs that "each local correctional facility shall maintain a facility food service program sufficient to satisfy the daily nutritional needs of each prisoner," N.Y. Comp. Codes R. & Regs. tit. 9, § 7009.1 (1998) ("Section 7009.1");

- Section 7009.2(a), which directs that "[t]he food service program in each local correctional facility shall ensure that all prisoners are provided with an appropriate level of nutrients and calories," *id.* § 7009.2(a) (1999) ("Section 7009.2"); and

- Section 7009.6(a), which directs that "[e]ach prisoner in a local correctional facility shall be served at least three meals in each 24-hour period[,] . . . scheduled so that":

  "(1) the morning meal is served at a regularly scheduled time between the hours of 5 a.m. and 9 a.m.";

  "(2) the noon meal is served at a regularly scheduled time between the hours of 11 a.m. and 2 p.m."; and

  "(3) the evening meal is served at a regularly scheduled time between the hours of 4 p.m. and 7 p.m.,"

  *id.* § 7009.6(a)(1)–(3) (2000) ("Section 7009.6").

(Am. Compl. at 1–2.)

## LEGAL STANDARDS

Where a plaintiff is proceeding IFP, 28 U.S.C. § 1915 instructs that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, a complaint or amended complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). In determining whether a claim is sufficiently plausible, a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not

6

required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.    Federal Claims

#### A.    Section 1983 Claims

Section 1983 provides redress for constitutional deprivations and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *accord Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-441, 2024 WL 1193062, at *1 (2d Cir. Mar. 20, 2024) (noting that Section 1983 does not provide an independent source of substantive rights). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See Sykes*, 13 F.3d at 519.

Here, the Amended Complaint alleges a deprivation of Mr. Morrow's First and Fourteenth Amendment rights. More specifically, the Amended Complaint alleges that the denial of Mr. Morrow's halal dinner meal on March 16, 2025: (1) caused an unconstitutional condition of confinement in violation of his rights under the Due Process Clause of the Fourteenth

Amendment; (2) deprived him of the free exercise of his religion in violation of his rights under the First Amendment; and (3) deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment.

### i. Conditions of Confinement Claim

As set forth in the Memorandum and Order, claims of unconstitutional conditions of confinement brought by a person detained pretrial are "governed by the Due Process Clause of the Fourteenth Amendment." *Darnell*, 849 F.3d at 29. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Id.* The standard for deliberate indifference involves a two-pronged test that requires showing an "objective deprivation" with the requisite "mens rea." *Darnell*, 849 F.3d at 32, 35.

To satisfy the first prong of the deliberate indifference analysis, often framed as the "objective prong," the Due Process Clause requires a showing that the challenged conditions were sufficiently serious such "that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [the detained person's] health." *Id.* at 29–30. "There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Volant v. Nassau Cnty.*, No. 2:24-cv-7882, 2025 WL 580367, at *3 (E.D.N.Y. Feb. 23, 2025). The Second Circuit has held that the Constitution requires that prisoners be fed nutritionally adequate food and that, "under certain circumstances[,] a *substantial* deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (emphasis added); *see also Darnell*, 849 F.3d at 29 ("A [pretrial] detainee's rights are at least as

great as [those] . . . available to a convicted prisoner."). In order to establish a claim that the denial of food constitutes a constitutional deprivation, however, a prisoner must establish that a "sufficiently serious condition" resulted from not receiving food. *Evans v. Albany Cnty. Corr. Fac.*, No. 9:05-cv-1400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009).

To satisfy the second prong of the deliberate indifference analysis, which concerns the defendant's mens rea, the Due Process Clause requires showing that the defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "In other words, the . . . 'mens rea prong' . . . is defined objectively" under the Fourteenth Amendment. *Id.*

As this Court made clear in the Memorandum and Order, "the absence of a single meal does not rise to the level of a constitutional deprivation" under *Darnell*'s two-pronged deliberate indifference standard for conditions of confinement claims under the Fourteenth Amendment Due Process Clause. (ECF No. 6 at 5). Mr. Morrow was apprised of that holding and of *Darnell*'s two-pronged deliberate indifference standard, yet the Amended Complaint does not allege any additional factual allegations in support of a "sufficiently serious condition" that resulted from the single missed meal. *Evans*, 2009 WL 1401645, at *9. Nor does the Amended Complaint allege facts that would permit the Court to find that Mr. Morrow's missed meal "pose[d] an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 29–30.

Likewise, the Amended Complaint does not allege any facts suggesting that Defendants possessed the culpable state of mind required for a Fourteenth Amendment conditions of

confinement claim. At best, the Court can reasonably infer from the Amended Complaint that Defendants knew or should have known that persons held pre-trial are entitled to "three meals in each 24-hour period" under Section 7009.6. N.Y. Comp. Codes R. & Regs. tit. 9, § 7009.6.[5] It is "well settled," however, that an "alleged violation of a prison policy, directive, or regulation, in and of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'" *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990) and collecting cases). Moreover, although Section 7009.6 may be relevant to whether the Individual Defendants knew or should have known that they had an obligation to provide a certain number of nutritious meals per day to detained persons, mere knowledge of such regulations does not plausibly show that the Individual Defendants "recklessly failed to act with reasonable care to mitigate the risk" that Mr. Morrow actually missed such a meal. *Darnell*, 849 F.3d at 35. Moreover, as explained further with respect to the free exercise claim, the factual allegations in the Amended Complaint at most allege negligence by jail staff. *See infra* Discussion § I.A.ii.

Accordingly, Mr. Morrow's Fourteenth Amendment conditions of confinement claim is not plausible and is thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

---

[5] Section 7009 pertains to "prisoner[s] in a local correctional facility" but it is reasonable to infer that the Amended Complaint alleges that this regulation applies to persons detained pretrial at the Suffolk County Correctional Facility. *See* .Y. Comp. Codes R. & Regs. tit. 9, § 7009.6(a).

### ii. Free Exercise Claim

The Free Exercise Clause of the First Amendment to the United States Constitution, which applies to New York through the Fourteenth Amendment, guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005); *Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023). Courts have long recognized that incarcerated persons "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *Kravitz*, 87 F.4th at 119. "In the prison context, however, the right to free exercise of religion is balanced against the interests of prison officials charged with complex duties arising from administration of the penal system." *Id*. at 127–28. Therefore, "to assess a free exercise claim, a court must determine":

> (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives.

*Id*. at 128. Additionally, in order to establish a "defendant's individual liability" in a Section 1983 claim, a plaintiff must show that "an officer-defendant act[ed] with at least deliberate indifference in depriving [the plaintiff] of the ability to engage in a religious practice." *Id*. at 129. Finally, the plaintiff must also show "that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 127. The Second Circuit has not addressed whether these standards also apply to a free exercise claim brought by a person held in pre-trial detention, although several district courts in the Circuit have applied the three prong-test and the deliberate indifference standards to such claims. *See, e.g.*, *Muflihi v. Rikers Island Emps.*, No. 24-cv-0395, 2024 WL 2058431, at *2–3 (S.D.N.Y. May 7, 2024); *Sheffield v. Cook*, No. 9:22-cv-0519, 2024 WL 1181081, at *6 (N.D.N.Y. Jan. 23, 2024),

*report and recommendation adopted*, No. 9:22-cv-519, 2024 WL 1181789 (N.D.N.Y. Mar. 18, 2024).

Prior to the Second Circuit's decision in *Kravitz*, the Second Circuit had "assumed—without holding—that to state a free exercise claim," incarcerated persons had to meet a higher standard that required showing "at the threshold that the disputed conduct *substantially burdens* [a] sincerely held religious belief[]." *Kravitz*, 87 F.4th at 119 (emphasis added). For example, in *Ford v. McGinis*, 352 F.3d 582 (2d Cir. 2003), the Second Circuit held that a district court erred in granting judgment as a matter of law on a prisoner's free exercise claim, which alleged that the prison failed to serve the plaintiff the "Eid ul Fitr feast" following the end of Ramadan. 352 F.3d at 586, 594. It reasoned that that the "Eid ul Fitr is a holiday of great religious significance" and is therefore "sufficiently unique in its importance within Islam to distinguish the present case from those in which the mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden." *Id.* at 594 & n.12 (citing *Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999)).

In *Kravitz* however, the Second Circuit rejected its earlier approach to assessing free exercise claims and held that a plaintiff need not show "a substantial burden," as such a requirement leads to "a misguided enterprise that the Supreme Court has called 'akin to the unacceptable business of evaluating the relative merits of differing religious claims.'" *Kravitz*, 87 F.4th at 122 (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990)). In rejecting the substantial burden test, the court in *Kravitz* also specifically identified as one "entry in [a] line of troubling decisions" a case in which a district court had "decided that a Muslim inmate who was denied Ramadan meal bags for two days . . . did not suffer a substantial

12

burden because he was still able to fast, pray, and read the Koran." *Id.* at 125 (discussing *Thompson v. Holm*, No. 13-cv-930, 2015 WL 1478523, at *6 (E.D. Wis. Mar. 30, 2015), *vacated and remanded*, 809 F.3d 376 (7th Cir. 2016)). As the court reasoned in *Kravitz*, analysis of this kind requires the district court to impermissibly "rel[y] on its own authority to determine what the observance" of a religious belief requires. *Id.* Accordingly, post-*Kravitz*, "a plaintiff may carry the burden of proving a free exercise violation . . . by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Id.* at 127.

Applying that law here, the deprivation of a single halal dinner tray during Ramadan may infringe upon a religious practice where the belief in observing Ramadan meals is "sincerely held" and the practice is "religious in the person's scheme of beliefs." *Kravitz*, 87 F.4th at 128. For the Court to hold otherwise would involve the "unacceptable business of evaluating the relative merits of differing religious claims," *id.* at 122, and the Second Circuit has explicitly rejected the notion that the "inability to provide a small number of meals" is a de minimis burden on religious exercise. *Ford*, 352 F.3d at 594 n.12. However, there are questions as to whether the Amended Complaint plausibly alleges that the challenged conduct infringed on a sincerely held religious belief of Mr. Morrow as required to plead a free exercise claim. Although courts do not examine "applicable religious tenets," the requirement to plausibly allege that the conduct at issue infringed on an individual's sincerely held religious beliefs is meant to "dispose of claims that are so clearly nonreligious in motivation as not to merit First Amendment protection." *Kravitz*, 87 F.4th at 127.

13

Here, the Complaint plausibly alleges that Mr. Morrow observes a practice of eating halal food consistent with a sincerely held religious belief, but neither the original Complaint nor the Amended Complaint allege that Mr. Morrow was denied halal food. (Compl. at 4 (alleging instead that Mr. Morrow was not fed whatsoever on March 16, 2025); Am Compl. at 2 (same)). Rather, both pleadings allege that Defendants failed to provide Mr. Morrow with adequate meals on March 16, 2025, which was during the month of Ramadan, and thereby prevented him from taking part in religious observance during Ramadan. (Am. Compl. at 3; Compl. at 6.) The pleadings are unclear as to any specific religious belief or practice that Mr. Morrow sincerely holds that was infringed by the challenged conduct. In his original Complaint, Mr. Morrow signed under penalty of perjury the statement that he "wasn't participating in Ramadan," and the original Complaint alleges that Mr. Morrow was "entitled to 3 meals a day" but did not receive either his regular meals or a "Ramadan tray[]." Compl. at 4, 6; s*ee Kravitz*, 87 F.4th at 128 (holding that the requirement to plead a sincerely held religious belief was met because "[i]t is not in dispute that Kravitz practices Judaism . . . [n]or do the officers dispute that Kravitz observes the holiday pursuant to sincerely held religious beliefs"). The Amended Complaint generally alleges that Mr. Morrow was "not . . . able to participate in [his] religious beliefs during a religious holiday of Ramadan," but it does not allege what specific belief was plausibly infringed.[6] (Am. Compl. at 1.) Instead, the Amended Complaint alleges, consistent with the

---

[6] As set out above, the Court considers the allegations made in the original Complaint because "courts typically consider allegations in both an original and amended complaint" in cases brought by pro se plaintiffs. *Olutosin*, 2016 WL 2899275, at *1 n.1. This rule is meant to "afford a [pro se] plaintiff additional leeway in his or her pleadings." *Id*. Here, rather than benefit Mr. Morrow, the original Complaint includes allegations that call into question whether the challenged conduct infringed on any sincerely held religious belief or practice. The Court cannot

original Complaint, that Mr. Morrow was entitled to three meals a day and was deprived of at least one meal. (Am. Compl. at 1–2.) Accordingly, the Amended Complaint does not allege that the meal Mr. Morrow was deprived of was required by Mr. Morrow's "scheme of beliefs" or that there was a religious significance to the meal Mr. Morrow was allegedly denied.

Even assuming, however, that the Amended Complaint plausibly alleges a sincerely held religious practice, it does not plausibly allege that the Individual Defendants were deliberately indifferent in depriving Mr. Morrow of a religious meal. "The First Amendment's command that government not 'prohibit' the free exercise of religion, U.S. Const. amend. I, connotes a conscious act, rather than a merely negligent one." *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023). "Given this understanding of the First Amendment, isolated acts of negligence cannot violate an individual's free exercise of religion in this context." *Id.*; *see also Matthews v. Akshar*, No. 9:25-cv-0767, 2025 WL 2793740, at *2–3 (N.D.N.Y. Oct. 1, 2025) (dismissing Free Exercise claims in the absence of allegations that any official knowingly prohibited, or infringed on, plaintiff's exercise of his religious beliefs); *Walker v. New York State Dep't of Correction & Cmty. Supervision*, No. 9:23-cv-00206, 2025 WL 2753702, at *3 (N.D.N.Y. Sept. 29, 2025) (dismissing Free Exercise claims where plaintiff did "not plausibly allege that [defendants] acted 'with at least deliberate indifference in depriving [him] of the ability to engage in a religious practice.'" (quoting *Kravitz*, 87 F.4th at 129)).

---

avoid considering the original Complaint because the Amended Complaint does not plead sufficient factual information to assess whether deliberate indifference is adequately pled. The Amended Complaint does not repudiate the allegation in the Complaint that Mr. Morrow was not participating in Ramadan. (Compl. at 5; *see also* Compl. at 1 (alleging only that Mr. Morrow was not "able to participate in [his] religious beliefs *during* [Ramadan]" and not that he was participating in Ramadan or that certain meals were required by this participation.)

The Amended Complaint does not plausibly allege that the denial of a Ramadan meal to Mr. Morrow was anything more than an "isolated act[] of negligence." *Wiggins*, 86 F.4th at 997. According to the grievance form that is appended to the Complaint and "integral" to the Amended Complaint, *see supra* n.4, the failure to provide Mr. Morrow a halal dinner was "due to a kitchen error." (Compl. at 6.) The Amended Complaint alleges that when Mr. Morrow's meal did not come, Mr. Morrow "informed staff about it." (Am. Compl. at 3.) These allegations do not allege that the failure to provide Mr. Morrow a meal was anything more than the result of the kitchen error noted on the grievance form. (*See* Compl. at 6.) Nor do any of the factual allegations present in the original Complaint, which are missing from the Amended Complaint, cure this deficiency. The original Complaint alleges (1) that the officer with "sgt. Badge # 5342" told Mr. Morrow that he would "make sure [Mr. Morrow's] dinner will come with the Ramadan meals even though [Mr. Morrow] wasn't participating in Ramadan"; and (2) that this officer admitted it was "his fault but there [was] nothing he [could] do" when the food did not come. (Compl. at 4.). Accordingly, the Amended Complaint does not plausibly allege that the missed meal was the result of deliberate indifference as opposed to negligence.

Mr. Morrow's free exercise claim is therefore dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1).

### *iii.  Equal Protection Claim*

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). There are three types of equal

protection claims, which are partially overlapping: (1) intentional discrimination; (2) selective enforcement; and (3) class of one. *Randolph v. DOCCS*, No. 17-cv-0700, 2018 WL 4374006, at *5 (S.D.N.Y. Sept. 13, 2018). Construing the Amended Complaint liberally, it does not plead an equal protection claim under any theory.

To state a claim under the first theory, a plaintiff must plausibly allege that a government actor intentionally discriminated against them on the basis of their religion. *Knight v. Connecticut Dep't of Pub. Health*, 275 F.3d 156, 166 (2d Cir. 2001); *Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 189 (2d Cir. 2012). There are three ways of showing intentional discrimination: (1) "a facially discriminatory law"; (2) "a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect"; and (3) "a facially neutral law that is enforced in a discriminatory manner." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, NY*, 945 F.3d 83, 111 (2d Cir. 2019).[7] The plaintiff must also show that their "treatment cannot survive the appropriate level of scrutiny." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).[8]

---

[7] "[A] plaintiff who . . . alleges an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).

[8] "[I]n the prison setting, [this] means [the plaintiff] must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Phillips*, 408 F.3d at 129. The Court need not determine whether the same standard applies to persons held pre-trial because the Amended Complaint does not plausibly allege that he was discriminated against on the basis of his religion.

Under an equal protection theory of selective enforcement, the plaintiff must plausibly allege that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (discussing *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). Such a claim "protects against both discrimination on the basis of a plaintiff's protected status . . . and discrimination on the basis of a defendant's personal malice or ill will towards a plaintiff." *Id.* The selective enforcement theory of equal protection "overlap[s]" with equal protection claims based on discriminatory applications of a facially neutral policy, with the "chief difference [being] the need for the plaintiff to identify comparators, which is required under the former but not the latter." *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, No. 20-cv-8964, __ F. Supp. 3d __, 2025 WL 2753551, at *30 (S.D.N.Y. Sept. 29, 2025); *see also White v. City of New York*, 206 F. Supp. 3d 920, 930 (S.D.N.Y. 2016) (same).

Finally, under an "class of one" equal protection theory, an incarcerated plaintiff must plausibly allege (1) that they have been subjected to intentionally different treatment from similarly situated people, (2) with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips*, 408 F.3d at 130 (reasoning that a prisoner-plaintiff's complaint "could be read to allege a so-called 'class of one' Equal Protection violation" (quoting *Olech*, 528 U.S. at 564)). As with the selective enforcement theory of equal protection, a claim under a class-of-one theory does not require an allegation of discrimination

18

on the basis of a protected classification or "proof of a defendant's subjective ill will towards a plaintiff" and instead requires an "extremely high" degree of similarly between the plaintiff and comparator. *Hu*, 927 F.3d at 93.

Here, the Amended Complaint does not allege facts from which the Court could reasonably infer a plausible equal protection claim under any of these theories. First, it does state a claim for intentional discrimination or selective enforcement because it does not allege that the denial food on March 16, 2025 was the result of intentional or purposeful discrimination on the basis of either Morrow's religion or "malicious or bad faith intent." *Hu*, 927 F.3d at 91; *Phillips*, 408 F.3d at 129. As explained in Section I.A.ii, the Amended Complaint does not plausibly allege that the denial of a Ramadan meal to Mr. Morrow was anything more than an isolated act of negligence. *See supra*, Discussion § I.A.ii; *see also Ackridge v. Aramark Corr. Food Servs.*, No. 16-cv-6301, 2018 WL 1626175, at *21 (S.D.N.Y. Mar. 30, 2018) (dismissing an equal protection claim that defendants "systematically discriminated against [the plaintiff] (and other Jewish [pre-trial detainees]) by denying [the plaintiff] kosher meals for eighteen days" on the basis that the plaintiff did not allege that "discriminatory intent was a motivating factor" in the denial of the meals). Moreover, "[c]onclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause." *Thomas v. Pingotti*, No. 9:17-cv-300, 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017).

Second, the Amended Complaint does not state a claim under a selective enforcement or a class-of-one theory because it "does not allege that [Mr. Morrow] was treated differently from *any* identified individuals, let alone individuals who he claims were similarly situated to him in

19

any respect." *Ackridge*, 2018 WL 1626175, at *21. Indeed, Mr. Morrow does not identify other persons "with religious dietary needs who were treated better than" either him or other Muslim individuals detained at Suffolk County Correctional Facility. *Id.*; *see also Vega v. Lantz*, No. 3:04-cv-1215, 2009 WL 3157586, at *8 (D. Conn. Sept. 25, 2009) (granting summary judgment because plaintiff had not presented evidence that members of other religions were "treated differently with regard to diet"); *Diaz v. Burns*, No. 6:10-cv-6595, 2013 WL 5951866, at *4 (W.D.N.Y. Nov. 6, 2013) (dismissing equal protection claim because the plaintiff did "not come close to sufficiently alleging facts that could be used to infer an allegation that similarly situated prisoners were treated more favorably than he was . . . beyond a speculative level"); *Byng v. Delta Recovery Servs., LLC*, No. 6:13-cv-733, 2013 WL 3897485, at *15 n.5 (N.D.N.Y. July 29, 2013) (dismissing equal protection claim where an incarcerated person did not allege any facts in the complaint to indicate he was similarly situated to any other individual or that any such individual was treated differently than he was), *aff'd*, 568 F. App'x 65 (2d Cir. 2014).

Accordingly, the Amended Complaint's Equal Protection claim is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

B.  RFRA Claims

The Amended Complaint's RFRA claims are not plausible as a matter of law because, almost 25 years ago, the United States Supreme Court rendered RFRA unconstitutional as applied to state and local governments. *City of Boerne v. Flores*, 521 U.S. 507 (1997). Given that the United States is not a party to this suit, RFRA has no application. Rather, affording the pro se Amended Complaint a liberal construction, Mr. Morrow's alleged denial of one halal meal

20

during the month of Ramadan properly lies under the Religious Land Use and Institutionalized

Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. However, "RLUIPA provides only for injunctive

and declaratory relief when a prison violates a [detained person's] religious rights." *Booker v.*

*Graham*, 974 F.3d 101, 107 (2d Cir. 2020) ("RLUIPA does not authorize monetary damages

against state officers in their official capacities . . . and does not create a private right of action

against state officers in their individual capacities." (quoting *Washington v. Gonyea*, 731 F.3d

143, 144 (2d Cir. 2013) (per curiam))). Because the Amended Complaint only seeks to recover

unspecified monetary damages, the Amended Complaint's RLUIPA claims are implausible and

are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).[9]

## II.    Municipal Liability

The Amended Complaint's Section 1983 claim against Suffolk County fails for the

additional reason that it does not plausibly allege that the failure to provide Mr. Morrow with a

halal dinner tray on a single date was the result of an official policy, practice, or custom of

---

[9] Although RLUIPA generally provides institutionalized persons with "greater protection" to exercise their religious beliefs than the First Amendment, *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015), it is well-established that the substantial burden test is applied to RLUIPA claims. *See Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009) (recognizing that RLUIPA prohibits the government from "substantial[ly] burden[ing]" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means); *see also Kravitz*, 87 F.4th at 126 n.12 (recognizing that RLUIPA continues to impose a substantial burden test despite the Second Circuit's rejection of this test for free exercise claims). A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia*, *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). The alleged failure to provide Mr. Morrow one meal during the month of Ramadan does not plausibly allege a substantial burden on his religious exercise. *Ford*, 352 F.3d at 594 n.12 (suggesting that "inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions" imposes only a de minimis burden).

Suffolk County. In order to prevail on a Section 1983 claim against a municipal entity such as Suffolk County, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

Here, the Amended Complaint does not allege any facts from which this Court could reasonably construe that the failure to provide Mr. Morrow dinner on March 16, 2025 was the result of a municipal, policy, practice, or custom. The Section 1983 claim against Suffolk County is thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii);1915A(b)(1).

### III.    State Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023). Having dismissed the federal claims alleged in the Amended Complaint for the reasons set forth above, the Court declines to

exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring) (the Second Circuit "takes a very strong position that state issues should be decided by state courts").

Thus, any state law claims that may be liberally construed from the allegations in the Amended Complaint are dismissed without prejudice and with leave to replead in state court.

## IV.    Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009). Mr. Morrow has already been granted leave to file an Amended Complaint. However, the Amended Complaint fails to correct any of the defects in the Complaint, which are identified in the Court's Memorandum & Order. Moreover, although the Amended Complaint attempts to assert several new claims, those claims largely suffer from the same defects identified in the Court's Memorandum & Order—namely that the Amended Complaint does not plausibly allege deliberate indifference, an equal protection violation, or anything more than an isolated missed meal. Accordingly, leave to further amend the Amended Complaint is denied. However, Mr. Morrow may pursue any valid claims he may have, including negligence, against the Defendants in state court.

## CONCLUSION

For the reasons stated above, this Court dismisses Mr. Morrow's Amended Complaint (ECF No. 6) as set forth above pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1). The Clerk of the Court shall enter judgment accordingly and mark this case closed.

The Clerk of the Court shall mail a copy of this Memorandum and Order and the Judgment entered in this case to Mr. Morrow at his address of record in an envelope marked "Legal Mail" and shall note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
　　　　January 22, 2026

　　　　　　　　　　　　　　　　　　*/s/ Nusrat J. Choudhury*
　　　　　　　　　　　　　　　　　　NUSRAT J. CHOUDHURY
　　　　　　　　　　　　　　　　　　United States District Judge